Good morning, Your Honors. May it please the Court, David L. Ross on behalf of the Petitioner. Your Honors, if I may address a question to the Court before I begin, if that is permissible. Certainly. This program that you have, this pilot program, is this something that will be in consultation with the Bar, or is this something that is totally Court-initiated? Well, we're still in such a pilot program, we don't know who we will consult with or what we will do. We are in contact with the Immigration Bar now. Thank you very much. This case revolves around, really, the issue of what is the standard of proof in an asylum case, notwithstanding everything that has been said by the respondent. The facts of this case are very simple. You have a woman who was raped, beaten, forcible entry into her house. Her husband was fired from his job. She was unable to obtain a transfer of her property that was initially her father's property. And all of this because she claims she has a mixed ancestry, Turkish and Armenian, and lived in Armenia, and has thus had a tremendous problem with that mixed ancestry. These facts are undisputed. In support of this claim, she testified, her husband testified, an expert professor from the University of Southern California, who is recognized in the field of history and social aspects in Armenia and Turkey, and also the United States State Department country reports all confirm that these things do happen in Armenia. So the whole thing turns on credibility, right? Yes, credibility is an important factor. But it's how you determine the credibility that makes the decision in this case. After you have all of this evidence, and you have, in addition, a verification from a hospital that she was raped and had a miscarriage as a result of her rape, the immigration judge in this case made a determination truly and solely based on only one fact, the testimony of an expert witness from the Immigration Service who works with document authentication, that the birth certificate, which was never admitted into the record, if the court will look in the record, it will see that at administrative record, page 48, the birth certificate wasn't even part of the record. It was submitted for identification only. The court made a determination that based on this expert's opinion, the document had in some way been altered, although this expert could not testify that the alteration of this document involved the ethnicity or mixed race of the individual, but could only testify that he could specifically state that one letter was changed, although he did testify that it appeared that there was a chemical alteration of the document on the entire second page. Now, the question is, after hearing the testimony of the two witnesses, after hearing the expert's testimony, after having a letter from a hospital confirming she was raped, is the judge's reasoning that there is a lack of credibility, specific and cogent enough to meet the test so that this particular non-credibility finding should stand and it is respectfully submitted to this court, that that is insufficient to vitiate the evidence that was submitted in the record. And it is further uncontested in AR-8 of the record that it was reported to the police and the police refused to investigate. Now, all of that evidence is submitted, and yet the immigration judge finds that because of this expert's opinion,  that the certificate, birth certificate, may have been altered, was sufficient to substantially negate all of the testimony that was presented to the court, which was uncontested by the government. And the government did not call the alien respondent, who was the petitioner in this case, to testify and ask specifically, did you or did you not alter the birth certificate? That was never addressed in the hearing itself. So what we really have here is an issue of what is the standard of proof. Now, we have the Ninth Circuit case of Lodha v. Immigration, 215-Fed3-889, which specifically says there is no corroboration necessary for an asylum claim. No, it's not necessary, but, you know, it's a legitimate basis to say, well, if you have this, you know, important document question, and corroboration is easily available, I mean, why isn't it corroborated? In other words, the sister lives right in the city, right? And she could have called her sister to, you know, corroborate her own testimony. That's a legitimate basis for, you know, further supporting the ruling that, you know, what the I.J. calls the fraudulent nature of the birth certificate goes to the heart of her claim. Now, there is the second part of this whole point, Your Honor, which is very interesting, which is that the sister did not obtain her asylum based on her ethnic origin. In fact, the government admits in their brief at page 29 that the sister's asylum grant was not based on the fact that she made a claim of mixed heritage, it was based on a complaint. Because the judge assumed that the sister obtained asylum based on the fact that she had the sister's birth certificate. And the judge did not make the same claim as the petitioner. I don't think the judge assumed that. The judge assumed that the sister would have relevant testimony to give to the ethnicity of the respondent, right? Well, there's nothing in the record to indicate that the sister would have been willing to testify that had the sister been called, she would have. But the presumption, if you have a sister who lives, you know, next door and knows about your family circumstances, isn't the presumption the sister would testify for you? As opposed to the presumption you're postulating that, well, there's nothing in the record that says the sister would have testified for her? Are they estranged? Your Honor, when the judge makes a conclusion that the failure of the sister to testify, who was never called as a witness, is dispositive, it should have been presented to the petitioner and the family. And she should have been asked. The IJA doesn't say it's dispositive. It says it further weakens the respondent's claim. Which I think is true. It further weakens the respondent's claim. Well, there is an assumption being made that there is a family relationship of such that the sister would testify for her other sister. There are many families. That's a pretty safe presumption. But there are many families where people do not help one another. In fact, we have no reason to believe that it would have happened either way. You see, I think given the fact that the after all, you know, the petitioner here, respondent there has the burden of proof, if that were the case, you know, the petitioner would say, well, you know, I couldn't call my sister because we're estranged or something like that. There's nothing in the record. And she has the burden of proof. And you're asking us to draw an unnatural presumption. No, what I'm saying, Your Honor, is that the judge, the IJA in this case, if she felt the sister's testimony was so important, she should have pointedly and directly said to the petitioner. Now you're blaming the IJA for the petitioner's failure to call a witness. You know, it's not the IJA's fault. I mean, you could have said, why, and then at that point, there would have been the possibility of a response. In this case — But that argument is not sufficient to overcome the substantial evidence. I don't believe. Your Honor, in this particular case, had the birth certificate not ever been presented, based on the testimony alone of this particular individual, without even her husband testifying, without the hospital records, you could have had a failure of testimony. I agree with that, but the fact is, she submitted, you know, a birth certificate, and it was found by a witness to be fraudulent. She didn't have to, but she did. So you can't ignore that. But the witness didn't testify it was fraudulent. The witness testified that there was an alteration. Alteration. I agree, and I agree with the conclusion that made. Alteration was thought to be a critical one. Material. Well, it went to whether she had a Turkish ancestor or not. And, in fact, that is true, that there was an issue as to whether or not the certificate was a valid, truthful certificate. But my argument to that, Your Honor, is, is that even had the certificate been found to be in itself fraudulent, that would not have been necessarily a basis for denying a certificate. I understand your argument. You have used your time. Thank you. Good morning, Your Honors. May it please the Court, my name is Carolyn Picotti, and I represent the Attorney General of the United States in this case. As the Court has noted in questioning my opposing counsel, the crux of this case involves a fraudulent birth certificate. This Court's precedent has ruled that where an asylum applicant testifies credibly that the, as to access to the birth certificate, there is a loss of persecution, that that is sufficient unto itself to establish eligibility for asylum or withholding of removal. However, where the immigration judge has reason to doubt the veracity of the asylum applicant's testimony, and corroborative evidence, if available, should be provided. In this case, the government's expert testified that there were significant alterations of the birth certificate. As noted by the Court, the responsibility for calling witnesses to corroborate her claim lies with the applicant, the asylum applicant, and as noted also, she failed to do this. Therefore, there is substantial evidence to support the immigration judge's finding that the claim was not, that her claim was not credible. This is not one of those cases where the fraudulent document that was used was merely some kind of a border-crossing card or something like that. Or something in order to effect an escape from a place of alleged persecution. But this document went to the heart of the Petitioner's claim. She claims persecution on the basis of her ethnicity because of her mixed parentage between her mother's Turkish ethnicity and her father's Armenian nationality. When that document was found to be fraudulent, it became incumbent upon the Petitioner to provide some kind of explanation or corroborative evidence to explain that. As none was forthcoming in this case, the immigration judge's finding that this claim was not credible on the basis of that document was perfectly, was supported by substantial evidence. Is that the end of it? That's the end of it as far as this record is concerned. Did you look at the Seventh Circuit case, Kursky, by Judge Posner, where there was an altered document? Your Honor, I'm not familiar with that Seventh Circuit case. Well, I won't bother you about it then if you haven't seen it. But on the facts, it's fairly close to this case. And the Seventh Circuit held that there was not a strong enough basis to destroy the credibility of the witness. Well, in this case, this document, the entire basis of her claim of persecution is based on her ethnicity. And the only evidence for that is this birth certificate. She could have had her sister come and testify. Her sister could have provided an affidavit. There could have been a statement from her mother or something like that. And there was absolutely nothing. So the only evidence that the immigration judge had to go on to find that these acts which are alleged to have occurred, occurred on the basis of a protected ground, was a birth certificate. Once that was determined to be fraudulent, then the immigration judge would have no basis upon make to make a finding that she was persecuted on the basis of her half-Turkish ethnicity. And that's it. Well, we could almost take judicial notice that there's a lot of hostility in the Armenian area. I mean, there's a lot of hostility of that region against Turks. Anybody who's got a Turkish father or mother is in deep trouble most of the time. Yes. The petitioner's expert, the professor from USC and the State Department report do relate the fact that there is a history of hostility between Armenia and Turkey going back all the way to World War I. It's not Glendale. It even carries over in Glendale, California. I mean, you don't have to be deaf, dumb, and blind to know that there is this problem. However, yes. Yes, that's true. However, the burden is on the applicant to establish eligibility for asylum. And the document that she used to establish that was found to be fraudulent. And there was no other corroborative evidence other to explain that. So as far as this record goes, then her claim, the immigration judge was justified in finding that her claim was not credible. And the board, therefore, affirmed that finding. And, therefore, the government argues that this Court is compelled to dismiss the petition for review on that basis. Thank you.
judges: Schroeder, Goodwin, Tashima